IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00160-KLM

DENNIS L. MONTANO,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

      Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court[1] on the **Social Security Administrative Record** [#13],[2] filed March 20, 2020, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq.   On April 14, 2020, Plaintiff filed an Opening Brief [#14] (the "Brief"). Defendant filed a Response [#15] in opposition, and Plaintiff filed a Reply [#16].   The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§

---

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#12, #17].

[2]  "[#13]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

On December 14, 2015, Plaintiff filed an application for supplemental security income under Title XVI, alleging disability beginning December 3, 2015.  Tr. 15.[3]  On November 5, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 27.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 14, 2015, the application date.  Tr. 17.  The ALJ found that Plaintiff suffers from eight severe impairments: (1) ulcerative colitis or Crohn's disease, (2) cavernous malformation of the right temporal lobe with associated seizures, (3) post-traumatic stress disorder, (4) panic disorder, (5) personality disorder or antisocial personality disorder, (6) persistent depressive disorder, (7) mild intellectual disability, and (8) obesity.  Tr. 17.  However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  Tr. 17.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> [H]e can frequently lift or carry ten pounds and occasionally twenty; he can stand and/or walk for about six hours in an eight-hour day; he can sit for about six hours in an eight-hour day; he can never climb ladders; he can occasionally climb ramps and stairs; he can frequently balance, stoop,

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 13 through 13-22 by the sequential transcript numbers instead of the separate docket numbers.

kneel, crouch and crawl; he has no manipulative, visual or communicative limitations; as a seizure precaution, he can perform no work at unprotected heights or in close proximity to dangerous moving machinery; he can understand and remember simple, routine tasks that can be learned with a brief demonstration within a thirty day period; he can sustain concentration over an eight hour day and forty hour week; he can occasionally interact with the general public, coworkers and supervisors; he can tolerate routine type work change; he can make simple work decisions; and he can travel and recognize and avoid work hazards.

Tr. 20.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff had no past relevant work, but that he was able to perform the representative occupations of housekeeper cleaner, cafeteria attendant, and power screw operator.  Tr. 26.  She therefore found Plaintiff not disabled at step five of the sequential evaluation.  Tr. 26-27.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. § 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. §

416.905(a)).  The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993).  Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*."  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.    Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff argues that the ALJ erred by failing to find that Plaintiff met or equaled Listing 12.11 and/or Listing 12.05.  *Brief* [#14] at 23-30.  He further argues that the ALJ erred in failing to consider the history of substance abuse including alcohol and cocaine abuse as a medically determinable impairment in formulating the RFC.  *Id.* at 30-31.  Plaintiff then argues that the ALJ erred in determining that Plaintiff has the RFC for light duty, primarily based on the ALJ's evaluation of medical opinion evidence.  *Id.* at 31-39.

**A.    Step Three**

**1.    Listing 12.11**

Plaintiff first argues that the ALJ erred in failing to determine whether Plaintiff met

or medically equaled Listing 12.11. *Id.* at 23.

To meet the criteria of Listing 12.11 regarding neurodevelopmental disorders, a

claimant must satisfy both A and B below:

> A.    Medical documentation of the requirements of paragraph 1, 2, or 3:
>    1.    One or both of the following: a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
>    2.    Significant difficulties learning and using academic skills; or
>    3.    Recurrent motor movement or vocalization.
>
> B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>    1.    Understand, remember, or apply information (see 12.00E1).
>    2.    Interact with others (see 12.00E2).
>    3.    Concentrate, persist, or maintain pace (see 12.00E3).
>    4.    Adapt or manage oneself (see 12.00E4).

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.11.  The regulations define the five-point rating

scale for the paragraph B criteria as follows:

> a.    No limitation (or none).  You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
> b.    Mild limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
> c.    Moderate limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d.    Marked limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e.    Extreme limitation.  You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.00F(2).

Although the ALJ did not explicitly consider Listing 12.11, the ALJ did consider Listings 12.04, 12.05, 12.06, 12.08, and 12.15.  Tr. 18.  Plaintiff concedes this, but argues that the ALJ "only analyzed the A and B criteria" for those Listings "and totally failed to analyze whether claimant met or medically equaled the Paragraph A or B criteria for Listing 12.11," thereby committing legal error.  *Brief* [#14] at 24.  However, Paragraph B for Listing 12.11 is the same as Paragraph B of Listings 12.04, 12.06, 12.08, and 12.15:

> Paragraph B of each listing (except 12.05) provides the functional criteria we assess, in conjunction with a rating scale (see 12.00E and 12.00F), to evaluate how your mental disorder limits your functioning.  These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to function independently, appropriately, effectively, and on a sustained basis (see §§ 404.1520a(c)(2) and 416.920a(c)(2) of this chapter).  To satisfy the paragraph B criteria, your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. (When we refer to "paragraph B criteria" or "area[s] of mental functioning" in the introductory text of this body system, we mean the criteria in paragraph B of every listing except 12.05.).

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.00A(2)(b).

The ALJ discussed all four of the Paragraph B criteria and determined that Plaintiff had "no more than a moderate limitation" in each one.  Tr. 18.  Plaintiff does not directly dispute these findings to point out how the ALJ may have erred but, rather, simply conducts his own analysis anew to show that Plaintiff meets the Paragraph B requirements.  *Brief* [#14] at 24-28.  Plaintiff essentially asks the Court to do the same, i.e., conduct its own de novo evaluation of the Paragraph B criteria.  This, however, this Court may not do.  *See Barnett*, 231 F.3d at 689.  The Court must limit itself to determining

whether the ALJ has followed the law and whether her conclusions are supported by substantial evidence.  *See Wilson*, 602 F.3d at 1140.  Here, Plaintiff has not argued how the ALJ may have erred, but merely that the Court must engage in a new analysis of an issue which the ALJ has, in fact, already addressed.  Thus, to the extent that the ALJ should have, but did not, specifically address Listing 12.11, the Court finds that such error is harmless.  *See Fischer–Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Accordingly, the Court finds that the ALJ did not commit reversible error at step three of her analysis with respect to Listing 12.11.

### 2.    Listing 12.05

Plaintiff next argues that the ALJ erred in failing to find that Plaintiff met Listing 12.05.  *Brief* [#14] at 28-30.  Plaintiff states that the Commissioner had previously determined that Plaintiff met the old version of Listing 12.05 during the adjudication of a prior claim, but that Plaintiff lost his eligibility after a conviction and prison sentence.  *Id.* at 28.  Plaintiff asserts that res judicata principles precluded the ALJ from finding that Plaintiff no longer meets the requirements of Listing 12.05.  *Id.* at 29.

Even assuming Plaintiff's prior eligibility for disability benefits, *see* Tr. 474-77, the Court finds that res judicata is not applicable under the circumstances here.  In *Gonzales v. Colvin*, 515 F. App'x 716, 720-21 (10th Cir. 2013), the claimant contended at a 2008 hearing that the ALJ was bound by the findings of a different ALJ at a 2001 hearing, each of which concerned a different claim period.  The Tenth Circuit Court of Appeals agreed that "[r]es judicata may apply in a social security case when a previous determination is made about the claimant's rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action."

*Gonzales*, 515 F. App'x at 720-21 (internal quotation marks omitted) (citing *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009); 20 C.F.R. § 416.1457(c)(1).  However, the Circuit distinguished cases where a second ALJ reevaluated evidence already presented and adjudicated by the first ALJ from cases where the "ALJ's evaluation of the claimant's second application for benefits was an independent consideration of her eligibility at the time of her second application."  *Gonzales*, 515 F. App'x at 721 (internal quotation marks omitted.  The Tenth Circuit relied in part on *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996), where the Seventh Circuit Court of Appeals "reasoned that the first ALJ's findings were binding only on the time period of the claimant's eligibility during her first application and had no effect on the second application for a later time period."  *Gonzales*, 515 F. App'x at 721.  The Tenth Circuit therefore concluded in *Gonzales* that, because the claimant's "second application involved a different, unadjudicated time period involving over five years of new evidence," and because "the second ALJ did not reevaluate evidence nor did he contradict the first ALJ's ultimate finding that [the claimant] was not disabled," the first ALJ's findings were not binding on the second ALJ.  *Id.*

Here, similarly, the second, current ALJ evaluated Plaintiff's eligibility over a period not overlapping with the first and which including a large amount of additional evidence. *Compare* Tr. 15 (noting that disability was alleged starting December 3, 2015) *with* Tr. 477 (discussing disability determination in 1999).  The Court therefore cannot find that the current ALJ was bound by any prior adjudication by a different ALJ pertaining to an earlier period.  *See Gonzales*, 515 F. App'x at 721.

Accordingly, the Court finds that the ALJ did not commit reversible error by failing to give Plaintiff benefits on the basis of res judicata.

**B.      Step Four**

At Step Four, Plaintiff argues that the ALJ erred in failing to consider his history of substance abuse including alcohol and cocaine abuse as a medically determinable impairment in formulating the RFC, *Brief* [#14] at 30-31., and that the ALJ erred in determining that Plaintiff has the RFC for light duty, *id.* at 31-39.

**1.      Substance Abuse**

Here, Plaintiff argues that the ALJ erred in failing to consider his history of substance abuse, including alcohol and cocaine abuse, as a medically determinable impairment in formulating the RFC. *Brief* [#14] at 30-31. If true, this could be grounds for reversal. *See, e.g.*, *Farrill v. Astrue*, 486 F. App'x 711, 712-13 (10th Cir. 2012) (reversing because the ALJ neglected to discuss "non-severe" but medically determinable mental impairments as part of the RFC determination at step four). However, the Court disagrees with Plaintiff's argument for two reasons. First, it is clear that the ALJ did not overlook Plaintiff's history of substance abuse. *See* Tr. 17. In fact, the ALJ specifically referenced the issue at Step Two as "a history of substance abuse" before stating: "He has used cocaine and methamphetamines during the period under review. The record does not support any significant functional limitations caused by his drug abuse. It is not severe." Tr. 17 (internal citation omitted).

Second, Plaintiff fails to direct the Court's attention to relevant evidence underlying his assertion that the ALJ should have included additional limitations on Plaintiff's RFC based on the history of substance abuse. An ALJ is not required to discuss every piece of evidence in the record. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, "[t]he record must demonstrate that the ALJ considered all of the evidence[.]"

- 11 -

*Id.* at 1010.  Here, the record shows that she did so.  Tr. 17 (citing Exhibits E1F, E16F).  To be sure, the ALJ's discussion here was brief; nevertheless, to succeed in his argument, Plaintiff must direct the Court's attention to some evidence that was apparently overlooked by the ALJ showing additional functional impairments based on the abuse.  Plaintiff's only attempt to do so is his assertion that drug abuse could have been the cause of his seizures, but the ALJ addressed this functional limitation in the RFC by barring Plaintiff from working at unprotected heights or around dangerous moving machinery.  *Reply* [#16] at 8; Tr. 20.

Even though the Court will not evaluate the evidence in the first instance, a task which is the job of the ALJ, Plaintiff must show the Court that there is sufficient evidence underlying his argument such that the case should be remanded for the ALJ's consideration.  Plaintiff has simply not done so here, and the Court will not manufacture support for Plaintiff's argument for him.  *See, e.g.*, *Castillo v. Colvin*, No. 14-978 SCY, 2016 WL 4425729, at *4 (D.N.M. Jan. 5, 2016).  Simply stated, Plaintiff has failed to show any functional limitations should have been included in the ALJ's RFC based on Plaintiff's history of substance abuse.  *See, e.g.*, *Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (rejecting argument that "the ALJ's RFC determination should have included [the plaintiff's] subjective complaints" where the ALJ found that the objective medical evidence did not support the plaintiff's "allegations concerning the . . . limiting effects of his pain" and the plaintiff did "not point to any medical evidence indicating his RFC should be more limited").

Accordingly, the Court finds that the ALJ did not commit reversible error in connection with the issue of Plaintiff's history of substance abuse.

- 12 -

### 2.     Light Duty

Here, Plaintiff argues that the ALJ erred in determining that Plaintiff has the RFC for light duty.  *Brief* [#14] at 31-39.  Plaintiff argues that the ALJ should have given great weight to the opinion of Plaintiff's treating physician Joseph Jiminez, M.D. ("Dr. Jiminez"), should have given greater weight to the opinion of examining psychologist Richard Madsen, Ph.D., ("Dr. Madsen") and should have given less weight to the opinion of consultative psychologist Gayle Frommelt, Ph.D. ("Dr. Frommelt").

### a.     Dr. Jiminez

Regarding Dr. Jiminez, the ALJ wrote:

> Joseph Jiminez, M.D., provided the claimant multiple Med-9 forms.  He wrote that the claimant was permanently and totally disabled due to digestive disorders, mental disorders, and a brain tumor.  Dr. Jiminez also submitted a statement alleging the claimant could not work due to a new onset seizure disorder, related to an intracranial meningioma.  The undersigned gives these opinions minimal weight.  Regarding the Med-9 forms, the undersigned notes that these forms are used to obtain state benefits.  The statutory definition of "disability" in Colorado may not be consistent with the Agency's definition.  Moreover, each of these opinions is a statement on an issue reserved to the Commissioner.

Tr. 24 (internal citations omitted).

"Generally, a treating physician's opinion receives more weight than other physicians' opinions since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence."  *Brownrigg v. Berryhill*, 688 F. App'x 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks and brackets omitted).  The evaluation of a treating physician's opinion requires "a

sequential two-step inquiry, each step of which is analytically distinct." *Brownrigg*, 688 F. App'x at 548 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)).

"First, the ALJ must consider whether the opinion is entitled to controlling weight." *Brownrigg*, 688 F. App'x at 548.  This analysis requires findings that the physician's opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and consistent with other substantial evidence in the record."  *Id.* (quoting *Krauser*, 638 F.3d at 1330) (internal quotation marks and brackets omitted).

"Second, if the opinion is not entitled to controlling weight, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in 20 C.F.R. §§ 404.1527 and 416.927 . . . for the weight assigned."  *Id.* (internal quotation marks, brackets, and footnote omitted).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Plaintiff argues that the ALJ should have given the opinions of Dr. Jiminez controlling weight, or that the ALJ at least should have discussed the six factors listed above.  Plaintiff asserts that the opinions of Dr. Jiminez are "medical opinions," because he said that Plaintiff "was permanently and totally disabled *due to digestive disorders, mental disorders, and a brain tumor*" and that Plaintiff "could not work *due to a new onset seizure disorder, related to an intracranial meningioma*."  *Brief* [#14] at 33-37 (emphases added).  The Court has found no legal authority to support this assertion.  The Court agrees with the ALJ and with Defendant that each of Dr. Jiminez's statements discussed here pertain to issues reserved solely for the Commissioner.  Tr. 24.  Although these statements by Dr. Jiminez are certainly "opinions," they are not "medical opinions," and, as such, they need not be given controlling weight or even weighed at all.  *See* 20 C.F.R. § 416.927(c)(2).  An ALJ may not give controlling weight or any special significance to statements by a treating physician, or other medical personnel, that the claimant was unable to work, because the determination of disability is reserved solely for the Commissioner.  *See Olson v. Berryhill*, 689 F. App'x 628, 631 (10th Cir. 2017) ("[A] treating physician may not render opinions that are essentially administrative findings . . . dispositive of a case such as whether the claimant is disabled." (internal quotation marks omitted)).  In addition, to the extent that Plaintiff asserts that the ALJ never discussed the "no work" opinion by Dr. Jiminez, the Court finds this is simply incorrect, because the ALJ explicitly stated that "each of these opinions is a statement on an issue reserved to the Commissioner."  Tr. 24.

According, the Court finds that the ALJ did not commit reversible error in connection with the analysis of Dr. Jiminez's opinions.

- 15 -

### b.      Dr. Madsen

Turning to Dr. Madsen, the ALJ wrote:

Richard Madsen, Ph.D., performed a consultative examination for the Agency.  He wrote that the claimant would have a marked impairment in performing detailed and complex tasks on a consistent basis over an extended period of time.  He would have a marked impairment in performing simple repetitive tasks on a consistent basis over an extended period of time.  He would have a marked impairment in maintaining acceptable attendance in the work place, performing activities consistently, and completing a normal workday or week without interruptions.  He would require additional supervision from someone trained to deal with the developmentally disabled.  He had a marked impairment in relating to authority figures.  He had a marked impairment in interacting with coworkers and the public.  He had a marked impairment in dealing with unusual stresses encountered in a competitive environment.  Dr. Madsen's opinion is not consistent with his own examination.  He reported the claimant had adequate persistence and pace.  While he had some impairment in performing arithmetic and remembering things, he was reasoning functionally.  These findings are not consistent with the marked limitations reported by Dr. Madsen.  Additionally, his opinion is largely based on the claimant's subjective reports.  The record contains no mental health therapy during the period under review.  There is no evidence in the record that would support a marked limitation in interacting with others.  The claimant has been observed to be pleasant.   He was also observed to be cooperative, with good eye contact.  The undersigned notes that Dr. Madsen examined the claimant only once.  Overall, the undersigned gives this opinion little weight.

Tr. 24 (internal citations omitted).

Plaintiff argues in part that "Dr. Madsen reviewed the two prior [consultative examiner] psychological examination reports, took into consideration [Plaintiff] had been on disability for twenty years due to mild intellectual disability, had no significant work history, suffered depression with decreased energy and motivation, was unable to get along with people and angered easily." *Brief* [#14] at 39.  Therefore, Plaintiff asserts that Dr. Madsen's opinion is well-supported.

"While the Commissioner's regulations provide that the opinions of examining physicians like Dr. [Madsen] are generally entitled to more weight than the opinions of consultative physicians like [Dr. Frommelt], *see* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(3), that rule is not absolute . . . ." *Deherrera v. Comm'r, SSA*, __F. App'x __, __, No. 20-1189, 2021WL 942778, at *2 (10th Cir. Mar. 12, 2021) (citing *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) ("An ALJ may decline to give controlling weight to the opinion of a . . . physician where he articulates specific, legitimate reasons for his decision, finding, for example, the opinion unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence in the record." (alteration, citation, and internal quotation marks omitted))). Here, the ALJ provided adequate reasons for declining to credit Dr. Madsen's opinion, demonstrating sufficiently that Dr. Madsen's opinion was contrary to his clinical examination findings. Tr. 14. Although perhaps other interpretations of the evidence are possible, the Court finds that "[m]ore than a scintilla of evidence" supports the ALJ's conclusions regarding this finding. *See Deherrera*, 2021 WL 942778, at *2.

Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

### c.    Dr. Frommelt

Regarding Dr. Frommelt, the ALJ stated:

Gayle Frommelt, Ph.D., evaluated the claimant's mental impairments at the initial level. She wrote that the claimant had a moderate restriction in his activities of daily living. He had moderate difficulties maintaining social functioning. He had moderate difficulties maintaining concentration, persistence or pace. He had no episodes of decompensation. Symptoms could interfere with completion of a normal workday or week or may cause inconsistent pace. When work did not require more than simple

instructions, ordinary routines and simple work decision making, limitations of attendance and pace would not prevent completion of a normal workday or week, or significantly reduce pace. The claimant could perform at a consistent pace without an unreasonable number and length of rest periods within these restrictions. The undersigned gives Dr. Frommelt great weight. While she did not have an opportunity to examine the claimant, her opinion is consistent with the limited mental health record. Her opinion is contradicted by the opinion of Dr. Madsen, but his opinion is given less weight for the reasons listed . . . . The undersigned notes that the record contains no evidence of ongoing mental health therapy during the period under review. The record does not support additional mental limitations.

Tr. 23 (internal citation omitted).

Plaintiff argues that Dr. Frommelt, who "did not exam[ine] [Plaintiff] but evaluated the record for the Agency" and "opined that [Plaintiff's] symptoms could interfere with completion of a normal workday or week or might cause inconsistent pace." *Brief* [#14] at 38. He argues that, "without any justification in the record or her report, Dr. Frommelt concluded when work did not require more than simple instructions, ordinary routines and simple work decision making, limitations of attendance and pace would not prevent completion of a normal workday or week, or significantly reduce pace," which Plaintiffs avers is "inherently in conflict with her primary opinion that [Plaintiff's] symptoms could interfere with completion of a normal workday or workweek or cause inconsistent pace . . . ." *Id.* at 38-39.

The Court finds Plaintiff's argument to be without merit, especially based on the lack of any true inconsistency within Dr. Frommelt's opinion. Dr. Frommelt simply identified potential functional limitations and then explained that limiting the types of work which Plaintiff could perform would accommodate those limitations. Tr. 114. Thus, again, although perhaps other interpretations of the evidence are possible, the ALJ's decision to

give Dr. Frommelt's opinion "great weight" is supported by "[m]ore than a scintilla of evidence." *See Deherrera*, 2021 WL 942778, at *2.

Accordingly, the Court finds that the ALJ did not commit reversible error on this issue.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated: March 29, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge